IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No.  3:23CV543 (RCY) |
| ) | |
| ADVANCED HOME INSPECTION, ) | |
| LLC, *et al.*, ) | |
|     Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff U.S. Bank National Association's ("U.S. Bank" or "Plaintiff") Motion for Default Judgment, ECF No. 11.  Defendants Advanced Home Inspection, LLC, and Bradley Gamlin—having never appeared in the case—did not file a response to Plaintiff's Motion, and the deadline to respond has passed.   For the reasons stated below, Plaintiff's Motion for Default Judgment will be denied.

**I.   BACKGROUND**

**A. Procedural History**

Plaintiff U.S. Bank filed its Complaint on August 24, 2023, alleging breaches of contract by Defendants.  Compl., ECF No. 1.  On September 28, 2023, Plaintiff filed two Proof of Service documents, one for Defendant Bradley Gamlin and another for Defendant Advanced Home Inspection, LLC ("Advanced") showing that Defendants were served that same day.  ECF Nos. 5, 6. Plaintiff filed a Request for Entry of Default as to Gamlin and a Request for Entry of Default as to Advanced on November 16, 2023.  ECF Nos. 7, 8.  On November 20, 2023, the Clerk requested affidavits necessary for Plaintiff to make a request for entry of default.  Plaintiff supplemented its previous requests accordingly, *see* ECF Nos. 7-2, 8-1, and the Clerk entered default as to both

Defendants, *see* ECF Nos. 9, 10.  On March 7, 2024, Plaintiff filed the instant Motion for Default Judgement against both Defendants.  Mot. Default J., ECF No. 11.

**B. Factual Background**

On November 29, 2021, Plaintiff executed two relevant contracts: a financing agreement (the "Freightliner Truck Agreement") with Advanced and a guaranty (the "Freightliner Truck Guaranty") with Gamlin.  Compl. ¶¶ 7, 10.  In the Freightliner Truck Agreement, Plaintiff agreed to finance Advanced's purchase of a 2014 Freightliner Cascadia 125 Truck.  *Id.* ¶¶ 7–8.  In exchange, Defendant Advanced agreed to provide Plaintiff with a security interest in the Freightliner Truck and thirty-four monthly payments of $1,417.74, for a total of $48,203.16.  *Id.* ¶¶ 9, 12.  Defendant Advanced further agreed to pay a 10% late fee if it made any payments more than five days beyond the due date.  Compl. Ex. 1 at 1, ECF No. 1-2.  In the event of Advanced's default, Advanced agreed Plaintiff could terminate the contract and require payment of the unpaid balance "discounted to present value at 2%," as well as payment of default interest on any unpaid amount "at the rate of 12% per year."  *Id.* at 2.  Finally, Advanced agreed to pay the reasonable attorneys' fees and court costs Plaintiff incurred enforcing its rights under the contract.  *Id.* at 2.

In an addendum to the Freightliner Truck Agreement, Defendant Gamlin agreed to guarantee Advanced's debt under the Freightliner Truck Agreement—making him jointly and severally liable in the event of Advanced's nonpayment.  *Id.* at 7.  The Freightliner Truck Guaranty also independently required Gamlin to "pay all costs, including attorneys' fees . . . incurred in any dispute regarding or enforcement of [the] Guaranty and the Agreements."  *Id.*

On February 17, 2022, Plaintiff and Advanced entered into another financing agreement (the "Vanguard Trailer Agreement"), which Gamlin also guaranteed ("Vanguard Trailer Guaranty").  Compl. ¶¶ 20, 23.  In terms mirroring those in the Freightliner Truck Agreement, Plaintiff agreed to finance Advanced's purchase of a 2016 Vanguard Dry Van Trailer.  *Id.* ¶¶ 20–21.  In exchange for

Plaintiff's financing, Defendant Advanced agreed to provide Plaintiff with a security interest in the Vanguard Trailer and fifty-eight monthly payments of $1,375.34. *Id.* ¶¶ 22, 25. Aside from the distinct subject matter, the Vanguard Trailer Agreement is largely indistinguishable from the Freightliner Truck Agreement and utilizes identical terms regarding late payments, default payments, and attorneys' fees. Compl. Ex. 2 at 1–2. The Vanguard Trailer Guaranty also mirrors the Freightliner Truck Guaranty, imposing joint and several liability upon Gamlin for Advanced's debt and requiring Gamlin to cover Plaintiff's reasonable attorney's fees. *Id.* at 7.

The Complaint suggests that Advanced ceased payments for the Freightliner Truck on April 3, 2023, *id.* ¶¶ 17–18, and ceased payments for the Vanguard Trailer on February 23, 2023 *id.* ¶¶ 30–31. On June 22, 2023, Plaintiff noted Advanced's default. *Id.* ¶ 18, 31.

On August 24, 2023, Plaintiff filed the instant Complaint, advancing two counts of breach of contract against Defendants jointly. *Id.* ¶¶ 6–31. Therein, Plaintiff requests judgements of $29,767.88 for breach of the Freightliner Truck Agreement and $65,992.66 for breach of the Vanguard Trailer Agreement, as well as attorneys' fees, court costs, and pre- and post-judgment interest. *Id.* ¶¶ 18, 31.

Neither Defendant appeared. Thus, on March 7, 2024, Plaintiff filed the instant Motion, asking this Court to award it default judgement. Mot. Default J., ECF No. 11. Specifically, Plaintiff asks for a judgment of $33,037.74 for Defendants' nonpayment on the Freightliner Truck Agreement and $74,087.03 for Defendants' nonpayment on the Vanguard Trailer Agreement.[1] *Id.* at 2–4. In support, Plaintiff provides a limited, summary accounting of the overdue payments and requested damages. *Id.* This accounting is reiterated in an affidavit from Kyle Lundeen, a Loss Mitigation Specialist employed by Plaintiff. Mot. Default J. Ex. 1 (hereinafter, "Lundeen Aff.") ¶¶ 19, 30, ECF No. 11-1. In support of the affidavit, Plaintiff provides screenshots of Defendants' accounts, showing

---

[1] Plaintiff asserts that both amounts include pre- and post-judgment interest. Mot. Def. J. 2–3.

that Defendants owe Plaintiff $7,789.43 for the Vanguard Trailer, Lundeen Aff. Ex. D at 4, ECF No. 11-5, and $6,065.91 for the Freightliner Truck, Lundeen Aff. Ex. B. at 4, ECF No. 11-3. Finally, Plaintiff requests an award of attorneys' fees and costs.[2]

## II.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default judgment. Default must be entered by the clerk "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After an entry of default, the plaintiff can apply to the clerk for an entry of default judgement if the claim is for a "sum certain or a sum that can be made certain by computation." *See* Fed. R. Civ. P 55(b)(1). When the relief requested is not for an ascertainable sum, the plaintiff must apply to the court for an award of a default judgment. *See* Fed. R. Civ. P 55(b)(2). "A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009).

"Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003); *see also Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998). In this inquiry, a district court may not consider facts outside of the complaint. *See Selig v. Niagara Recovery Sols. Mgmt. Grp.*, 2020 U.S. Dist. LEXIS 132423, at *1 n.3 (E.D. Va. July 27, 2020) (citing *Ryan v. Homecomings Fin. Network*, 253

---

[2] The particular amount sought is unclear. In the Motion for Default Judgment, Plaintiff first writes that it is entitled to attorneys' fees and costs in the amount of $36,741.26, but in the very next paragraph requests attorneys' fees and costs in the amount of $36,471.26. Mot. Default J. 4. In both instances, Plaintiff cites the affidavit of Ronald S. Carter, Esq., attached as Exhibit 2 to the Motion for Default Judgment, as support for the amount sought. *Id*. However, that affidavit supports neither sum, as it lists $35,708.17 for attorneys' fees and $763.00 for costs, which totals $36,471.17. Mot. Default J. Ex. 2 (hereinafter, "Carter Aff.") 3, ECF No. 11-6. This inconsistent accounting is emblematic of the overall issues with Plaintiff's Motion for Default Judgment.

F.3d 778, 780 (4th Cir. 2001)). However, when valuating damages, the Court does not automatically accept the plaintiff's factual allegations. *Ryan*, 253 F.3d at 780; *Kindred v. McLeod*, 2010 U.S. Dist. LEXIS 123116, 2010 WL 4814360, at *3 (W.D. Va. Nov. 19, 2010).

### III.  DISCUSSION

**A. Procedural Requirements**

As a preliminary matter, the Court finds that the procedural requirements of maintaining this suit in federal court are satisfied, to wit: the Court has subject matter jurisdiction over the controversy based on diversity of citizenship and more than $75,000 in controversy; the Court has personal jurisdiction over the Defendants based on Defendants' minimum contacts arising out of their business in the forum; venue is proper because a substantial portion of the events giving rise to the claim occurred in the forum; and Defendants were personally, properly, and timely served. ECF Nos. 5, 6.

Finding it proper to do so, the Court therefore proceeds with the default judgment analysis.

**B. Substantive Claims**

Plaintiff advances two claims of breach of contract against Defendants, one count for each contract breached. Specifically, Plaintiff alleges that Advanced has breached both financing agreements. Compl. ¶¶ 8–13, 20–26. Plaintiff alleges further that Gamlin, as the guarantor, is liable for both breaches. *Id*. at ¶¶ 10–17, 23–31. As described below, the Court finds that Plaintiff has adequately stated claims against both Defendants, in both counts.

1. <u>Choice of Law</u>

A federal court sitting in diversity "must apply the substantive law of the forum state including its choice of law rules." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Virginia is a traditional state. As a result, '[i]t is well settled that Virginia . . . adheres to traditional conflict-of-law rules, when presented with a choice-of-law question.'" *Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465

(E.D. Va. 2006). (quoting *Clark v. Clark*, 398 S.E.2d 82, 89 (Va. Ct. App. 1990)). "Virginia courts . . . determine whether an issue is procedural or substantive according to [Virginia's] own conflicts rules. If the issue is deemed procedural under the conflict of laws rules, the court shall apply its rules and procedure." *Clark*, 398 S.E.2d at 89; *see also Hooper v. Musolino*, 364 S.E.2d 207, 211 (1988); *Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 571 (2003); *RMS Tech., Inc. v. TDY Indus.*, 64 F. App'x 853, 857 (4th Cir. 2003) (unpublished). Substantive matters are those that go to the basis of the right itself, where procedural matters are those merely connected with the remedy. *See Jones v. R. S. Jones & Assocs.*, 431 S.E.2d 33, 34 (1993).

For contractual issues, "questions of breach are determined by the law of the place of performance." *Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1417 (E.D. Va. 1988). Questions regarding "[t]he nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties." *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (1970); *see also Colgan Air.*, 507 F.3d at 275 ("Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances . . . ."); *Settlement Funding, LLC v. Neumann-Lillie*, 645 S.E.2d 436, 438 (2007) ("If a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied."). "Under Virginia law, a contract is made when the last act to complete it is performed . . . ." *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004).

The parties have clearly expressed an intention that Minnesota substantive law govern the interpretation and application of their contracts. Both Agreements state that they are to be "governed and construed with Minnesota law." Compl. Ex. 1 at 2; Compl. Ex. 2 at 2. Included as addenda to the Agreements, both Guaranties state that Defendant Gamlin "expressly consent[ed] to the laws . . .

6

of Minnesota." Compl. Ex. 1 at 7; Compl Ex. 2 at 7. Therefore, this Court gives the choice-of-law clauses their intended effect and analyzes the contracts under Minnesota law.

### 2. Breach of Contract

Taking the facts alleged in the Complaint as true, Plaintiff has adequately demonstrated that Advanced breached both the Freightliner Truck Agreement and the Vanguard Trailer Agreement. A Minnesota breach of contract claim has three elements: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Minnesota law defines "conditions precedent" as those that are to "be performed before the agreement of the parties becomes operative." *Nat'l Union Fire Ins. v. Schwing Am., Inc.*, 446 N.W.2d 410, 412 (Minn. Ct. App. 1989).

The Complaint adequately states each element as to both financing agreements. First, Plaintiff has sufficiently alleged the formation of two contracts between Plaintiff and Defendant Advanced. Compl. ¶¶ 7–12, 20–25. In fact, it attaches both contracts to its Complaint as exhibits. Compl. Ex 1; Compl Ex. 2. Second, there are no unsatisfied conditions precedent as to either agreement. The Complaint demonstrates that both contracts were operative: Plaintiff provided Advanced with the contracted-for funds and Advanced made a series of payments to Plaintiff in return. Compl. ¶¶ 11–17, 24–31. Third, Plaintiff adequately alleged that Advanced breached both contracts by failing to make monthly payments as required by the contracts. *See id*. at ¶¶ 12–18, 25–30. As a result, the Complaint adequately stated that Advanced breached both financing agreements under Minnesota law. Because the Complaint also alleges that Gamlin guaranteed the financing agreements, Plaintiff has adequately demonstrated that Gamlin is liable for Advanced's nonpayment. Thus, taking the facts alleged in the Complaint as true, the Court finds that Plaintiff has adequately stated a claim for breach of contract in each of Counts One and Two, for which both Defendants are liable.

7

**C. Damages**

The default judgment inquiry does not end upon a determination that a plaintiff has adequately stated a claim. Rather, for default judgment to be appropriate, a district court must be able to fix the amount of damages. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 130–31 (4th Cir. 2020); *Calderon v. Geico Gen. Ins.*, 754 F.3d 201, 206–07 (4th Cir. 2014). When considering whether default judgment is appropriate, a district court may consider "the sum of money at stake," "the possibility of dispute concerning the material facts," and the strong policy preference for decisions on the merits. *Berthiaume v. Doremus*, 998 F. Supp. 2d 465, 470 n.6 (W.D. Va. 2014) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)). In valuating damages at the default judgment stage, courts do not automatically accept a plaintiff's factual allegations as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P 8(b)(6).

1. <u>Attorneys' Fees</u>

The Court begins its examination with the Plaintiff's request for attorneys' fees and costs. Compl. ¶¶ 18, 31. Both Agreements and both Guaranties provide that U.S. Bank is entitled to "reasonable attorneys' fees" incurred in the enforcement of the contracts.[3] Compl. Ex. 1 at 2; Compl. Ex 2 at 2; Compl. Ex.1 at 7; Compl. Ex 2 at 7.

The Court is principally unable to fix Plaintiff's attorney's fees because Plaintiff requests inconsistent amounts of fees. *See supra* n.2. On this ground alone, the Court cannot award Plaintiff attorneys' fees. Further, Plaintiff has failed to provide sufficient information for the Court to determine whether any amount of requested fees would be reasonable. The affidavit of Plaintiff's counsel explains that the "matter was undertaken on a one-third contingency, plus costs basis." Carter Aff. ¶ 11. The document also describes the attorney's experience and source of the costs. *Id.* at ¶¶

---

[3] The validity of the contracts is governed by Minnesota law. Contractual provisions conferring a right to recover attorneys' fees in the event of future litigation have long been valid and enforceable in Minnesota. *See United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 55 (Minn. 2012).

2–12. However, counsel for Plaintiff fails to state how many hours he has worked on this case. *Id.* at ¶¶ 1–8, 12–13.

Under all relevant schemes of law,[4] the reasonableness of attorneys' fees hinges on an evaluation of the hours worked by the attorneys in relation to the costs requested. *See Schlegel v. Bank of Am.*, 628 S.E.2d 362, 369 (Va. 2006); *State by Head v. Paulson*, 188 N.W.2d 424, 426 (Minn. 1971) ; *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). This is so regardless of the contingency fee percentage negotiated between the client and their attorney. *Job Am. Mgmt. Exp. Imp. - N.C., Ltd. v. Kaltone Petro. Mktg. Corp.*, 1999 U.S. Dist. LEXIS 23894, at *21 (E.D. Va. Dec. 8, 1999) ("[W]hatever arrangement the plaintiff has with its counsel is of no relevance to the Court's determination as to the 'reasonable fees' owed by the defendants based on the specific circumstances of this litigation."); *Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 537 (E.D. Va. 2012) ("[W]hile [a party]'s contingency fee agreement with counsel is a factor considered in assessing what attorney's fees to award, it is not controlling. Rather, an independent evaluation of the reasonableness of the fee request is required.").

Because Plaintiff has failed to provide the Court with sufficient information to determine whether the requested attorneys' fees are "reasonable," the Court cannot calculate the total amount of damages. *See Aero Norfolk, LLC v. Phila. Truck Lines, Inc.*, 2022 U.S. Dist. LEXIS 50504, at *14 (E.D. Va. Mar. 21, 2022). Without the ability to fix the amount of damages, the Court is unable to award default judgment as to Plaintiff's attorneys' fees. *Id.*

2. Default Damages

The Court also declines to award the lofty judgment demanded in the Complaint without an itemized calculation of Defendant's debt, fees, and interest. By way of reminder, Plaintiff requests

---

[4] The Court notes that there is an issue regarding which forum's law applies to determine the reasonableness of attorneys' fees. However, it declines to reach this question, since Plaintiff fails to demonstrate reasonableness under each possible analysis.

9

judgements of $29.767.88 for breach of the Freightliner Truck Agreement and $65.992.66 for breach of the Vanguard Trailer Agreement, as well as pre- and post-judgment interest. Compl. ¶¶ 18, 31. In support, Plaintiff has provided a limited, summary accounting of the requested damages. Mot. Default J. 2–3; Mot. Default J. Ex. 1 ¶¶ 19, 30. However, the Court finds that this accounting is far too vague to support default damages. For instance, Plaintiff asserts that it is owed pre-judgment interest "at the rate of 12% per annum." *Id.* at 3. However, it fails to specify whether this interest is simple or compound. Further, rather than itemizing Defendants' debts, the accounting merely summarizes groups of debts, fees, and charges, which it combines to calculate the total balance of Defendants' debts. *See id.* at 2–4. Finally, this accounting does not clearly incorporate the overdue amounts represented in the Plaintiff's exhibits. *See* Lundeen Aff. Ex. B at 4 (showing a $6,065.91 balance due); Lundeen Aff. Ex. D at 4 (showing a $7,789.43 balance due). Thus, the Court finds that this accounting is unreliable and does not provide adequate evidence to fix damages.

Given the amount of money at stake, the risk of incorrect calculations, and the disfavored nature of default judgment, *Berthiaume*, 998 F. Supp. 2d at 470 n.6, the Court declines to award the requested damages absent specific, reliable evidence of the amount requested in the Complaint.

## IV. CONCLUSION

The Court concludes that Plaintiff has adequately stated each of its claims against Defendants. However, Plaintiff has failed to adequately evidence its demands for attorneys' fees and damages. Thus, the Court will deny the Motion for Default Judgment, without prejudice. An appropriate order will issue.

Date: <u>January 3, 2025</u>  
Richmond, Virginia

/s/ RCY  
Roderick C. Young  
United States District Judge

10